UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
MONTUERAY DUPONT,                       :
                        Plaintiff,      :
                                        :    08 Civ. 10220 (DLC)
            -v-                         :
                                        :    OPINION & ORDER
NEW JERSEY STATE POLICE, et al.,        :
                        Defendants.     :
----------------------------------------X

Appearances:

For plaintiff:
Rocco Avallone
Cronin & Byczek, LLP
1983 Marcus Avenue, Suite C-120
Lake Success, NY 11042

For defendants Peter Brown and Lucien LeClaire:
Andrew M. Cuomo, Attorney General of the State of New York
Lee Alan Adlerstein, Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271

For defendant William Humphries:
Thomas C. Bigosinski
McElroy, Deutsch, Mulvaney & Carpenter LLP
88 Pine Street, 24th Floor
New York, NY 10005

For defendant New Jersey State Police:
Mark T. Hall
Jeffrey M. Kadish
Morgan Melhuish Abrutyn
651 W. Mt. Pleasant Avenue
Livingston, NJ 07039

For defendant Daniel Oliveira:
John A. Stone
DeCotiis, Fitzpatrick, Cole & Wisler, LLP
GrayBar Building at Grand Central
420 Lexington Avenue, Suite 300
New York, NY 10170

For defendant Ross Petruska:
Darren M. Gelber
Wilentz, Goldman, & Spitzer P.A.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095

DENISE COTE, District Judge:

Plaintiff Montueray Dupont, a former employee of the New York Department of Correctional Services ("DOCS"), brings this action challenging the termination of his employment with DOCS after a series of events that began with his November 24, 2006 arrest and concluded with an arbitrator's October 1, 2007 ruling.  He has accused members of the New Jersey State Police ("NJSP"), who arrested and testified against him, and DOCS of infringing his constitutional rights in violation of 42 U.S.C. § 1983 ("Section 1983") and committing state-law torts.  Dupont has agreed to voluntarily discontinue his case against two of the defendants, and the remaining defendants seek dismissal of the complaint.  For the following reasons, their motions are granted.

BACKGROUND

The following facts, taken from the complaint in this action and documents it incorporates by reference, are presumed to be true for the purposes of this motion.  Dupont, a New York

resident, was a DOCS corrections officer from 1997 until his suspension on November 25, 2006.

1. The Prosecution

On November 24, 2006, defendant Ross Petruska, an NJSP Trooper, pulled over a vehicle driven by Dupont because it was traveling without its tail lights illuminated.  Dupont was traveling with a friend and two other passengers; all four men are African-Americans.  After Petruska stopped the car, Dupont informed him that he was a peace officer carrying a registered weapon.  Petruska ordered all of the men out of the car and proceeded to search the vehicle.  He confiscated plaintiff's firearm, and, assisted by defendant NJSP Trooper Daniel Oliveira, arrested Dupont and detained him in the Newark police station.  On November 24, Dupont was charged with unlawful possession of a weapon in violation of New Jersey Criminal Law § 2C:39-5b.  Plaintiff was also charged with marijuana possession in violation of New Jersey Criminal Law § 2C:35-10(a)(4). Following criminal proceedings in New Jersey, the weapons possession charge was dismissed on April 27, 2007 for lack of probable cause, and the marijuana possession charge was dismissed for lack of probable cause on July 5, 2007.

2. The Termination of Plaintiff's Employment

Following Dupont's arrest, Petruska contacted DOCS and informed Dupont's supervisor of his arrest.  Defendant Peter Brown, DOCS' Director of Labor Relations, suspended Dupont without pay on or about November 25, 2006.  Brown sent a notice of discipline to Dupont on December 20, 2006 that charged him with 1) associating with persons possessing marijuana while driving in New Jersey on November 24; 2) traveling with two members of the "Bloods" gang on November 24, and thereby affiliating with persons whose interests conflicted with Dupont's effective performance of his duties; 3) appearing on a Bloods-related website in a music video for rapper Jim Jones; 4) being arrested for possession of marijuana on November 24; and 5) being arrested for possession of a loaded semi-automatic handgun on November 30.

On December 21, plaintiff filed a grievance protesting the charges contained in the notice of discipline.  Pursuant to the collective bargaining agreement between plaintiff's union and DOCS, an arbitration was held on September 17, 2007.  At the arbitration, which occurred in New York, Petruska and defendant NJSP Detective William Humphries testified against Dupont.  They accused Dupont of being a member of the "Bloods" gang because 1) he was en route to a concert by rapper Jim Jones when he was arrested, 2) one of the passengers in the car was wearing red

and white, the colors of the Bloods, and 3) plaintiff had appeared in a music video for Jones.  On October 1, the arbitrator found Dupont guilty of the charges in the notice of discipline and upheld the termination of his employment.

3. The Lawsuit

Plaintiff filed this lawsuit on November 24, 2008, naming as defendants the NJSP, Troopers Petruska and Oliveira, Detective Humphries, Brown, and Lucien LeClaire, Jr., the Acting Commissioner of DOCS from October 2006 to April 2007.  Each individual defendant is sued in his personal and official capacities.

Plaintiff's first four causes of action, addressed to the NJSP and its officers who are named as defendants, challenge his arrest and criminal prosecution.  Dupont's first cause of action is a claim under Section 1983 against Humphries and Petruska for false arrest, illegal search, abuse of process, and malicious prosecution, primarily based on allegations that defendants lacked probable cause to arrest Dupont.  Plaintiff alleges that Petruska and Humphries conspired to fabricate an account of Dupont's arrest and make false statements regarding the events at issue.

Dupont's final two causes of action attack defendants' roles in the disciplinary process that culminated in the

termination of his employment, arguing that defendants conspired to discipline Dupont based on demonstrably false accusations. Dupont's fifth cause of action claims that Petruska, Humphries, Oliveira, Brown and LeClaire violated his rights to free speech, free association and equal protection.[1]  Plaintiff alleges that Humphries and Petruska falsely testified at the arbitration hearing about his alleged Bloods affiliation and the connection between rapper Jim Jones and the Bloods, despite knowing that the criminal charges against Dupont had been dismissed for lack of probable cause.  He also alleges that Brown presented misleading testimony from a New York government official that falsely accused Dupont of making a gang hand signal in the music video.  Dupont's sixth and final cause of action, arising under the Equal Protection Clause of the Constitution, charges that Brown and LeClaire treated Brown differently from similarly situated DOCS employees in retaliation for his exercise of his constitutional rights.

On April 3, 2009, Brown and LeClaire (the "DOCS Defendants"), the NJSP, Humphries, Oliveira, and Petruska each moved to dismiss the complaint.  Plaintiff has agreed to voluntarily discontinue his claims against the NJSP and Trooper

---

[1] Despite including some equal protection and, implicitly, due process claims, as discussed below, Dupont labels this cause of action "A Fifth Cause of Action in Violation of Plaintiff's First Amendment Rights."

Oliveira, and to discontinue his claims against LeClaire in his official capacity.[2]

The motions filed by the DOCS Defendants and the two members of the NJSP remaining in the lawsuit will be considered in turn.  In brief, all claims against LeClaire are dismissed for his lack of personal involvement, and Brown is entitled to qualify immunity on any claim adequately pleaded against him. There is no personal jurisdiction over the two NJSP defendants.

DISCUSSION

1. The DOCS Defendants

The DOCS Defendants have moved to dismiss the complaint on several grounds, including immunity (absolute and qualified) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  A court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).  To survive such a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to

_____

[2] In a telephone conference held with all parties on August 10, 2009, the plaintiff represented that, aside from discontinuing his claims against the NJSP and Oliveira, the complaint represented his final statement of his claims.

'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell
Atlantic v. Twombly, 555 U.S. 544, 570 (2007)); see also South
Cherry Street, LLC v. Hennessee Group LLC, --- F.3d ---, No. 07-
3658-cv, 2009 WL 2032133, at *5 (2d Cir. July 14, 2009) (courts
are to "assum[e] all 'well-pleaded factual allegations' to be
true, and 'determin[e] whether they plausibly give rise to an
entitlement to relief'" (citing Iqbal, 129 S.Ct. at 1950)).
This "plausibility standard is not akin to a probability
requirement, but it asks for more than a sheer possibility that
a defendant has acted unlawfully." Iqbal, 129 S. Ct. 1949
(citation omitted). Applying the plausibility standard is "a
context-specific task that requires the reviewing court to draw
on its judicial experience and common sense." Id. at 1950. "A
pleading that offers labels and conclusions or a formulaic
recitation of the elements of a cause of action will not do."
Id. at 1949. (citation omitted). "[T]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Harris v. Mills, 572 F.3d 66, --,
No. 07-2283-cv, 2009 WL 1956176, at *4 (2d Cir. July 9, 2009).
A complaint must "give[] the defendant fair notice of what the
plaintiff's claim is and the grounds upon which it rests."
Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (citation
omitted).

A. Personal Involvement of Defendant LeClaire

Defendant LeClaire protests that Dupont has insufficiently alleged his personal involvement in the constitutional violations at issue.  Section 1983 provides in part that

> [e]very person who, under color of any statutes, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

42 U.S.C. § 1983.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted); accord Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009).

A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights.  Martinez v. California, 444 U.S. 277, 285 (1980).  Respondeat superior is not a sufficient basis to establish that the liability of a defendant acting in a supervisory capacity.  Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).  The personal involvement and liability of supervisory personnel is established when the supervisory official has "actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate

9

indifference by failing to act." <u>Blyden v. Mancusi</u>, 186 F.3d
252, 265 (2d Cir. 1999) (citation omitted).  Thus, a plaintiff
may establish a supervisor's personal involvement by showing
that the supervisor:

> (1) directly participated in the violation,
> (2) failed to remedy the violation after
> being informed of it by report or appeal,
> (3) created a policy or custom under which
> the violation occurred, (4) was grossly
> negligent in supervising subordinates who
> committed the violation, or (5) was
> deliberately indifferent to the rights of
> others by failing to act on information that
> constitutional rights were being violated.

<u>Iqbal v. Hasty</u>, 490 F.3d 143, 152-153 (2d Cir. 2007) (citation
omitted).

Dupont alleges that LeClaire is responsible as Acting
Commissioner for the overall operations of DOCS, for the
discipline of DOCS' uniformed staff, and for setting the
standards under which disciplinary proceedings are brought
against DOCS' employees.  He is also "responsible for the
policies and practices as set forth below that have resulted in
the deprivation of Plaintiff's rights under federal law and has
failed to take necessary and appropriate actions to prevent such
deprivations."  References to LeClaire in the complaint are few
and non-specific, however, and the complaint makes no mention of
any policy or practice that led to the violation of Dupont's
rights.  Dupont's fifth cause of action, which alleges various

constitutional violations arising from the disciplinary process, states that "defendants['] conduct in conspiring with and participating in disciplining the Plaintiff violates Plaintiff's rights."  After describing the false testimony that Petruska, Humphries, and Brown solicited and presented at the plaintiff's arbitration hearing, the plaintiff claims that he has suffered harm "[a]s a result of the above-described actions on the part of defendants Brown and LeClaire."  Dupont's equal protection claim similarly avers that his rights were violated "[a]s a result of the aforementioned actions on the part of the Defendants," a group that includes LeClaire.

Without any identification of the "policies and practices" that led to a deprivation of Dupont's constitutional rights, or how LeClaire was responsible for them, the complaint fails to give LeClaire fair notice of any basis to assert his personal involvement in the wrongs from which Dupont alleges he suffered. Dupont's claims against LeClaire shall be dismissed.


B. Absolute Immunity

Brown argues that his prosecutorial role in Dupont's disciplinary proceeding entitles him to absolute immunity. Brown suspended Dupont following Dupont's arrest, sent a notice of discipline to Dupont listing five grounds for the termination

of his employment, and assisted in representing DOCS during the arbitration process.

Absolute and qualified immunities protect officials from liability for constitutional violations. Mangiafico v. Blumenthal, 471 F.3d 391, 394 (2d Cir. 2006). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," Burns v. Reed, 500 U.S. 478, 486-87 (1991), and qualified immunity is "the norm" for executive officials. Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). A defendant bears the burden of establishing his right to immunity. Mangiafico, 471 F.3d at 394. To determine whether an official is entitled to absolute immunity, courts "employ a functional approach, looking at the nature of the function performed." Id. (citation omitted).

The Supreme Court has recently reconfirmed that prosecutors are absolutely immune from liability in Section 1983 lawsuits based on prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." Van De Kamp v. Goldstein, 555 U.S. ---, 129 S.Ct. 855, 860 (Jan. 26, 2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430, (1976)). Generally, a government attorney is entitled to absolute immunity "when functioning as an advocate of the state in a way that is intimately associated with the judicial process," but

12

not "when functioning in an administrative or investigative capacity." Mangiafico, 471 F.3d at 396.  In addition to attorneys, "agency officials performing certain functions analogous to those of a prosecutor," such as "initiat[ing] administrative proceedings," may also receive absolute immunity. Spear v. Town of West Hartford, 954 F.2d 63, 66 (2d Cir. 1992) (citation omitted).  As cited by the Second Circuit in Spear, the Supreme Court noted in Butz v. Economou, 438 U.S. 478 (1978), that "[t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution," such that immunity should protect the "discretion which executive officials exercise with respect to the initiation of administrative proceedings." Spear, 954 F.2d at 66 (citing Butz, 438 U.S. at 515).

To determine whether absolute immunity attaches, a court must consider 1) whether the process at issue shares "characteristics of the judicial process," and 2) whether the individuals in question were functioning in a prosecutorial capacity. DiBlasio v. Novello, 344 F.3d 292, 297-98 (2d Cir. 2003) (citation omitted).  Courts deciding whether a procedure includes characteristics of the judicial process must examine

> "(a) the need to assure that the individual
> can perform his functions without harassment
> or intimidation; (b) the presence of

> safeguards that reduce the need for private
> damages actions as a means of controlling
> unconstitutional conduct; (c) insulation
> from political influence; (d) the importance
> of precedent; (e) the adversary nature of
> the process; and (f) the correctability of
> error on appeal."

Id.

To assess whether an individual was acting in a prosecutorial capacity, the second prong of the DiBlasio inquiry, courts have examined whether the official made a discretionary decision to prosecute, among other factors. Scotto v. Almenas, 143 F.3d 105, 112-13 (2d Cir. 1998).  Courts have also looked at "(1) whether a historical or common law basis exists for immunity from suit arising out of performance of the function; [and] (2) whether performance of the function poses obvious risks of harassing or vexatious litigation against the official," noting that "absence of historical or common-law support -- either direct or by analogy -- for cloaking the challenged actions with absolute immunity is generally determinative."  Mangiafico, 471 F.3d at 395 (citation omitted). "Since § 1983 on its face does not provide for any immunities, we would be going far to read into it an absolute immunity for conduct which was only accorded qualified immunity in 1871, when the statute was enacted."  Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 357 (2d Cir. 2004) (citation omitted).

Brown is not entitled to absolute immunity.  Proceedings to terminate employment are too distant from the judicial process to extend absolute immunity to them.  See Scotto, 143 F.3d at 111.  Moreover, Brown has not shown that he exercised sufficient discretion in filing charges against Dupont.  Id. at 112 (denying absolute immunity for parole officer who initiated parole revocation proceedings).  DOCS' procedures for discharging its employees did not require Brown to perform "quasi-public adjudicatory and prosecutorial duties."  Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 58 (2d Cir. 1996).[3] The absence of a persuasive historical or common law analogy for granting absolute immunity to Brown's role in initiating the

---

[3] District courts in this circuit examining this issue in the context of public employee disciplinary proceedings have both found and rejected absolute immunity.  See Amorosano-Lepore v. Generoso, No. 06 Civ. 1223 (WCC), 2008 WL 4525426, at *5 (S.D.N.Y. Oct. 3, 2008) (rejecting absolute immunity for supervisors bringing disciplinary proceedings against a city employee where the defendants lacked discretionary authority to initiate proceedings); Anemone v. Metropolitan Transp. Authority, 410 F.Supp.2d 255, 272 (S.D.N.Y. 2006) (MTA Inspector General was not entitled to absolute immunity because he "can only investigate abuse and has no authority actually to bring charges and initiate a criminal prosecution") (emphasis in original); Contes v. Porr, 345 F. Supp. 2d 372, 378-79 (S.D.N.Y 2004) (city manager who initiated disciplinary charges against firemen has absolute immunity); Verbeek v. Teller, 158 F. Supp. 2d 267, 281-83 (E.D.N.Y. 2001) (town trustees and counsel receive absolute immunity in a Section 1983 action brought by a discharged policeman challenging his disciplinary proceeding, but police chief who brought the charges does not).

process for terminating Dupont's employment and in assisting
DOCS through the arbitration process is "determinative" against
displacing the customary qualified immunity that he would
receive.  Mangiafico, 471 F.3d at 395.

C. Procedural Due Process

    While the plaintiff does not label his claims as arising
under the due process clause, his allegation that his employment
was terminated based on the presentation of false testimony
raises the possibility that he states a claim for the
deprivation of his employment without due process.  Recognizing
this implication, Brown moves to dismiss the false testimony
claims by arguing that Dupont received a fair hearing and that
the dismissal of the New Jersey criminal proceedings did not bar
DOCS from terminating his employment based on the same set of
events.

    "[D]ue process guarantees notice and a hearing prior to the
termination of a tenured public employee," although the
requirements related to the hearing are "minimal," at least
"where the state affords plaintiff, subsequent to his
termination, a full adversarial hearing before a neutral
adjudicator."  Locurto v. Safir, 264 F.3d 154, 173-74 (2d Cir.
2001).  In New York, an Article 78 hearing, N.Y. C.P.L.R. § 7801
et seq., "constitutes a wholly adequate post-deprivation hearing

for due process purposes" when a public employee seeks to
challenge his dismissal.  Locurto, 264 F.3d at 175.  Dupont has
made no showing that he availed himself of this remedy, and he
may not proceed on his allegation that he was discharged without
due process.  See Munafo v. Metro. Transp. Auth., 285 F.3d 201,
214 (2d Cir. 2002) (dismissing a public employee's procedural
due process claim where he failed to pursue his contentions
related to the termination of his employment in an Article 78
proceeding).

D. Equal Protection

        Brown attacks Dupont's equal protection allegations on the
grounds that Dupont, as a public employee, may not assert a
"class of one" equal protection claim.  The Supreme Court
recently established that "the class-of-one theory of equal
protection has no application in the public employment context."
Engquist v. Oregon Dept. of Agr., --- U.S. ---, 128 S.Ct. 2146,
2156 (2008).  Dupont explains in his brief that his employment
was not at will, and, for this reason, Engquist should not
apply.  Engquist makes clear that no public employees, whether
employed at will or not, may bring class-of-one claims under the
Equal Protection Clause.  Id.

        Dupont also attempts to recast his equal protection claim
by asserting that he was discriminated against because he is

African-American.  But, the complaint fails to state a claim for
violation of the Equal Protection Clause based on race
discrimination.  While he identifies himself as an African-
American in the complaint, he makes no references to his race in
the equal protection claim.[4]  For instance, he does not allege
that he was treated differently in the disciplinary process from
other similarly situated DOCS officers who are not African-
American.  His boilerplate allegation that he was "treated
differently from similarly situated Department of Correction
employees for reasons unrelated to a legitimate government
objective" does not constitute fair notice of a claim of race
discrimination.

E. Qualified Immunity

Brown argues that he is entitled to qualified immunity.  As
Dupont's equal protection and procedural due process claims have
been dismissed, it is only necessary to address whether
qualified immunity applies to Dupont's First Amendment claim.[5]

---

[4] Dupont's complaint mentions racial profiling, but in reference
to his arrest and not the DOCS disciplinary proceeding.

[5] Qualified immunity "applies only in suits against officials in
their personal capacity."  Cartier v. Lussier, 955 F.2d 841, 844
(2d Cir. 1992).  While Dupont concedes to dismissal of claims
brought against LeClaire in his official capacity, he has not
consented to dismissal of the claims brought against Brown in
his official capacity.  Claims brought under federal law against
state officers sued in their official capacity are barred by the
Eleventh Amendment to the extent that the relief sought is
retrospective.  K & A Radiologic Tech. Servs., Inc. v. Comm'r of

Dupont claims that the termination of his employment violated his First Amendment rights to free speech and free association, apparently referring to his right to use a hand signal in a music video and to affiliate with the individuals with whom he was arrested, both of which he contends that Brown wrongly concluded were evidence of his affiliation with the Bloods.

Qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kelsey v. County of Schoharie, 567 F.3d 54, 60-61 (2d Cir. 2009) (citation omitted). Qualified immunity is appropriate if "a reasonable officer could have believed that his actions were lawful, in light of clearly established law and the information the officer possessed," or "if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Id. (citation omitted). Because qualified immunity is both "a defense to liability and a limited entitlement not to stand trial or face the other burdens of

---

Dep't of Health, 189 F.3d 273, 278 (2d Cir. 1999). "[A] plaintiff may sue a state official acting in his official capacity -- notwithstanding the Eleventh Amendment -- for prospective, injunctive relief from violations of federal law." State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (citation omitted). Since Dupont seeks only damages from Brown, and no prospective injunctive relief, any claim against Brown in his official capacity is dismissed.

litigation," Iqbal, 129 S.Ct. at 1946 (citation omitted), it should be determined early in the proceedings if possible. Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 760 (2d Cir. 2003).

The initial question with respect to qualified immunity is whether, viewing the facts alleged in the light most favorable to the plaintiff, there was a constitutional violation. See Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006). The next questions are whether that right was clearly established at the time the challenged decision was made, and whether the defendants' actions were objectively unreasonable. Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003).  A constitutional right is "clearly established" where "(1) the law is defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has recognized the right; and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Reuland v. Hynes, 460 F.3d 409, 420 (2d Cir. 2006) (citation omitted).  The Supreme Court recently held in Pearson v. Callahan, 555 U.S. ---, 129 S.Ct 808, 818 (2009), that lower courts need not address these questions in any particular order, although "it is often beneficial to do so." Finnigan v. Marshall, No. 07-9464-cv, 2009 WL 2231428, at *5 n.3 (2d Cir. Jul. 28, 2009) (citation omitted).

As a public employee, to establish a First Amendment retaliation claim, a plaintiff must show: "(1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action." Singh v. City of New York, 524 F.3d 361, 372 (2d Cir. 2008). Following the balancing approach developed by the Supreme Court in Pickering v. Board of Education, 391 U.S. 563, 568 (1968), if a plaintiff has alleged these three elements, the public employer may still avoid liability by showing "that the employee's interest in expressing himself on that matter is outweighed by injury that the speech could cause to the employer's operations." Piscottano v. Murphy, 511 F.3d 247, 270 (2d Cir. 2007). Piscottano upheld the termination of the employment of corrections officers who were suspected of gang affiliation, finding that the officers did not have a First Amendment right to associate with a gang. Id. at 278.

Even were Dupont able to establish that his appearance in the music video and association with others in a car were instances of speech addressed to a matter of public concern, see id. at 276 (finding that expressive conduct approving a criminal gang was expression on a matter of public concern), Piscottano indicates that there was no clearly established law in 2006 and 2007 forbidding the dismissal of a corrections officer on the

basis of perceived gang affiliation.  Id. at 278.  Brown would not have understood that clearly established law forbade disciplining Dupont.

Dupont argues that Brown falsely accused and disciplined him for a Bloods affiliation that did not exist.  Brown would also receive qualified immunity against a First Amendment claim that he impaired Dupont's freedoms of speech and intimate association with the other passengers in the car or as a participant in the Jim Jones music video, regardless of any ties to the Bloods.  There was no clearly established law in 2006 and 2007 protecting friendship, affiliation with a business enterprise, or affiliation with a social club as a form of intimate association.  Patel v. Searles, 305 F.3d 130, 136 (2d Cir. 2002) (declining to decide whether the right to intimate association extends to friendships); see also Piscottano, 511 F.3d at 278-79.  Any claim premised on the right of intimate association will thus be dismissed against Brown on qualified immunity grounds, and the entirety of Dupont's First Amendment claim is consequently dismissed.

2. Petruska and Humphries' Motions to Dismiss

NJSP Troopers Humphries and Petruska have moved pursuant to Rule 12(b)(2), Fed. R. Civ. P., to dismiss Dupont's claims against them for lack of personal jurisdiction, among other

grounds.  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (citation omitted). Where, as here, there has been no discovery, the plaintiff need only make "legally sufficient allegations of jurisdiction" through its pleading and affidavits in order to survive a motion to dismiss.  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).

"A federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits -- including that state's long-arm statute -- to the extent this law comports with the requirements of due process." Arar v. Ashcroft, 532 F.3d 156, 173 (2d Cir. 2008).  New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(2) ("Section 302(a)(2)"), provides for personal jurisdiction over a non-domiciliary where, inter alia, the non-domiciliary "commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act."

The defamation exception to long-arm jurisdiction under Section 302 applies to allegations that in fact sound in defamation, not just allegations that explicitly bear a defamation label.  Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 157 (2d Cir. 1996) ("[p]laintiffs may not evade the

statutory exception by recasting their cause of action as something other than defamation"). Cantor Fitzgerald recognized that jurisdiction under Section 302(a)(2) was not available to plaintiffs whose claims were based upon defendant's defamatory statements, even though the plaintiffs alleged the commission of other torts. Id. Defamation involves "a false statement, published without privilege or authorization to a third party, constituting fault, and it must either cause special harm or constitute defamation per se." Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 169 (2d Cir. 2003) (citation omitted). Words that tend to "disparage a person in the way of his office, profession or trade" are defamatory per se, and do not require a plaintiff to plead proof of special damages. Davis v. Ross, 754 F.2d 80, 82 (2d Cir. 1985) (citation omitted).

It is undisputed that New Jersey State Troopers Petruska and Humphries are non-domiciliaries without any significant economic ties to New York and are only subject to personal jurisdiction, if at all, through Section 302(a)(2). For purposes of long-arm jurisdiction, the relevant tortious act committed in New York would be the presentation of false testimony at Dupont's arbitration hearing. The other transgressions of which Petruska and Humphries are accused occurred in New Jersey.

24

Dupont's allegations against Petruska and Humphries sound in defamation and prevent the exercise of personal jurisdiction under Section 302(a)(2).  Dupont alleges that these defendants offered false statements disparaging him at his arbitration by linking him to drugs, weapons possession, and the Bloods.  While Dupont attempts to apply the labels of constitutional torts to his accusation, his claim remains premised on the idea that Petruska and Humphries defamed him at the arbitration hearing.  His allegations nearly mirror the elements of defamation: a false statement, delivered to a third party (at the arbitration), with intent, and disparaging Dupont in his profession as a DOCS officer.  See Peters, 320 F.3d at 169.  Personal jurisdiction is therefore inappropriate under Section 302(a)(2).

Dupont also alleges that Petruska and Humphries conspired with Brown and LeClaire in New York to terminate plaintiff's employment, but this allegation does not support personal jurisdiction because it lacks any specificity beyond the bald allegation that the defendants conspired to discipline Dupont.  "[T]he bland assertion of conspiracy or agency is insufficient to establish jurisdiction." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 793 (2d Cir. 1999) (citation omitted).  The claims against defendants Petruska and Humphries are accordingly dismissed.

CONCLUSION

Dupont's claims against LeClaire and Brown are dismissed
for failure to state a claim pursuant to Rule 12(b)(6), Fed. R.
Civ. P, except for Dupont's First Amendment claim against Brown,
which is dismissed on qualified immunity grounds. Dupont's
claims against Petruska and Humphries are dismissed under Rule
12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction.
Dupont's claims against Oliveira and the NJSP are dismissed with
Dupont's consent. The Clerk of Court shall close the case.

SO ORDERED:

Dated:     New York, New York
           August 14, 2009

                                   DENISE COTE
                         United States District Judge

26